Slip Op. 23-88

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| IKADAN SYSTEM USA, INC., and WEIHAI GAOSAI METAL PRODUCT CO., LTD., | |
| Plaintiffs, | |
| v. | Before: Leo M. Gordon, Judge |
| UNITED STATES, | |
| Defendant, | Court No. 21-00592 |
| and | |
| HOG SLAT, INC., | |
| Defendant-Intervenor. | |

**OPINION**

[CBP's <u>Remand Results</u> sustained.]

Dated: June 13, 2023

<u>Richard P. Ferrin</u>, Faegre Drinker Biddle & Reath LLP, of Washington, D.C., argued for Plaintiffs Ikadan System USA, Inc., and Weihai Gaosai Metal Product Co., Ltd. With him on the brief were <u>Douglas J. Heffner</u> and <u>William Randolph Rucker</u>.

<u>Ashley Akers</u>, Trial Attorney, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., argued for Defendant United States. With her on the brief were <u>Brian M. Boynton</u>, Principal Deputy Assistant Attorney General, and <u>Patricia M. McCarthy</u>, Director. Of counsel was <u>Shae Weathersbee</u>, Attorney, Office of the Chief Counsel, U.S. Customs and Border Protection, Washington, D.C.

<u>Zachary Simmons</u>, Steptoe & Johnson LLP, of Washington, D.C., argued for Defendant-Intervenor Hog-Slat, Inc. With him on the brief was <u>Gregory S. McCue</u>.

Gordon, Judge: This action involves a challenge by Plaintiffs Ikadan System

USA, Inc. and Weihai Gaosai Metal Product Co., Ltd. ("Ikadan" and "Gaosai" respectively)

to an affirmative determination of evasion by U.S. Customs and Border Protection ("Customs" or "CBP") under the Enforce and Protect Act, 19 U.S.C. § 1517 (2018)[1] ("EAPA"). See Notice of Determination as to Evasion in EAPA Consol. Case No. 7474, (CBP Office of Trade Remedy & Law Enforcement Directorate ("TRLED") June 21, 2021), PR[2] 46, CR 123 ("Initial Determination"); Final Administrative Review Determination in EAPA Consol. Case No. 7474, (CBP Office of Trade Regulations & Rulings ("OR&R") Oct. 26, 2021), PR 80 ("Final Determination"); Remand Redetermination in EAPA Consol. Case No. 7474, ECF No. 52 ("Remand Results").[3]

Before the court, Plaintiffs maintain that CBP's determinations rest on unlawful interpretations of EAPA and unreasonable findings of fact by CBP.[4] See Pls.' Mot. for J.

---

[1] All citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, and all references to the U.S. Code are to the 2018 edition unless otherwise specified. The Enforce and Protect Act was enacted as part of the Trade Facilitation and Trade Enforcement Act of 2015, Pub. L. No. 114–125, § 421, 130 Stat. 122, 161 (2016).

[2] "PR" refers to a document contained in the public administrative record. See ECF No. 25. "CR" refers to a document contained in the confidential administrative record. See ECF No. 26. "RPR" refers to a document contained in the public administrative record filed in support of CBP's Remand Results. See ECF No. 57.

[3] Following Plaintiffs' initial motion for judgment on the agency record under USCIT Rule 56.2 challenging the Final Determination, Defendant moved for a remand to place on the administrative record a relevant scope ruling by the U.S. Department of Commerce. See Consent Motion for Remand, ECF No. 50; Order (Aug. 18, 2022), ECF No. 51 (granting remand request).

[4] Under EAPA, Plaintiffs may challenge CBP's evasion determination after the completion of the administrative review by OR&R. See 19 U.S.C. § 1517(g)(1). Here, the Final Determination affirmed CBP's Initial Determination in its entirety. See Final Determination at 10. Accordingly, Plaintiffs' Complaint and their briefing address CBP's findings and conclusions from the Initial and Final Determinations. See Complaint at 9–11, ECF No. 2; Pls.' Br. 1. Subsection (g) of the statute permits judicial review of both initial and final determinations, and the court has previously observed that its "review of Customs' determination as to evasion may encompass interim [i.e., building-block] decisions subsumed into the final determination." Vietnam Finewood Co. v. United States, 44 CIT ___, ___, 466 F. Supp. 3d 1273, 1284 (2020); see 19 U.S.C. § 1517(g).

on the Agency R., ECF No. 44[5] ("Pls.' Br."); Pls.' Supp. Br. for Mot. for J. on the Agency R., ECF No. 60 ("Pls.' Supp. Br."); see also Def.'s Resp. Pls.' Mot. for J. on the Agency R., ECF No. 64 ("Def.'s Resp."); Def.-Intervenor's Resp. Pls.' Mot. for J. on the Agency R., ECF No. 66; Pls.' Reply, ECF No. 68.  The court has jurisdiction pursuant to 19 U.S.C. § 1517(g) and 28 U.S.C. § 1581(c).  For the reasons set forth below, the court sustains CBP's Remand Results.

## I. Background

## A. Determinations Under EAPA

Under EAPA, Customs makes a determination of evasion when an importer is

> entering covered merchandise into the customs territory of the United States by means of any document or electronically transmitted data or information, written or oral statement, or act that is material and false, or any omission that is material, and that results in any cash deposit or other security or any amount of applicable antidumping or countervailing duties being reduced or not being applied with respect to the merchandise.

Id. § 1517(a)(5)(A).

In reaching a determination as to what constitutes "covered merchandise," i.e., "merchandise that is subject to … an antidumping [or] countervailing duty order," Customs shall refer the matter to the U.S. Department of Commerce ("Commerce") if CBP is "unable to determine whether the merchandise at issue is covered merchandise."  Id. § 1517(a)(3), (b)(4)(A) (emphasis added).  Commerce shall then determine whether the merchandise is covered under an antidumping or countervailing

---

[5] All citations to the parties' briefs and the agency record are to their confidential versions unless otherwise noted.

duty order.  Id. § 1517(b)(4)(B) ("After receiving a referral … the administering authority shall determine whether the merchandise is covered merchandise and promptly transmit that determination to [CBP].").

Under § 1517(c), CBP (TRLED) makes an initial determination of evasion based on the record before it.  Following this determination, a party found to have entered covered merchandise through evasion may file an appeal with CBP (OR&R) for de novo review under subsection (f) ("administrative review").  After completion of the administrative review, an importer may seek judicial review.  Id. § 1517(g).

Subsection (d) of the statute sets forth the enforcement measures that flow from CBP's initial determination.  Id. § 1517(c)–(d).  Subsection (e) empowers CBP to take additional interim measures if it determines within 90 days of the initiation of investigation that "there is a reasonable suspicion that such covered merchandise was entered into the customs territory of the United States through evasion."  Id. § 1517(e).  These interim measures include "suspend[ing] the liquidation of each unliquidated entry of such covered merchandise that entered on or after the date of the initiation of the investigation" and taking "such additional measures as [Customs] determines necessary to protect the revenue of the United States, including requiring a single transaction bond or additional security or the posting of a cash deposit with respect to such covered merchandise."  Id. § 1517(e)(3).

## B. CBP's Determination of Evasion

Plaintiffs are importers of pig farrowing crates and pig farrowing flooring systems, of which steel tribar floors are a component.  In early 2020, Defendant-Intervenor Hog

Slat, Inc. ("Hog Slat") filed an allegation with Customs contending that Plaintiffs' entries containing steel tribar floors evaded certain antidumping duty ("AD") and countervailing duty ("CVD") orders issued by Commerce. See Initial Determination at 2; see also Certain Steel Grating from the People's Republic of China, 75 Fed. Reg 43,143 (Dep't of Commerce July 23, 2010) (AD order); Certain Steel Grating from the People's Republic of China, 75 Fed. Reg. 43,144 (Dep't of Commerce July 23, 2010) (CVD order) (together, the "AD/CVD Steel Orders").

The AD/CVD Steel Orders cover:

> certain steel grating, consisting of two or more pieces of steel, including load-bearing pieces and cross pieces, joined by any assembly process, regardless of: (1) size or shape; (2) method of manufacture; (3) metallurgy (carbon, alloy, or stainless); (4) the profile of the bars; and (5) whether or not they are galvanized, painted, coated, clad or plated. Steel grating is also commonly referred to as "bar grating," although the components may consist of steel other than bars, such as hot-rolled sheet, plate, or wire rod.

75 Fed. Reg. at 43,143, 43,144.

In June 2021, TRLED initially determined that "[s]ubstantial evidence demonstrate[d] that the Importers [Gaosai and Ikadan] entered certain steel grating [in the form of tribar floors] from the People's Republic of China … into the United States [during the period of investigation ("POI")[6]], and failed to declare [their] merchandise … as subject to the [AD/CVD Steel Orders]." Initial Determination at 2.

---

[6] "[T]he entries covered by the investigation are those entered for consumption, or withdrawn from warehouse for consumption, from May 26, 2019, through the pendency of [the] investigation." Initial Determination at 3–4 (citing 19 C.F.R. § 165.2).

Contrary to Ikadan's assertions that "no tribar floors were imported during the POI," TRLED found that several entries made by Ikadan contained steel tribar floors, and that "the image of a fully assembled farrowing crate unit … along with purchase order details submitted to the Manufacturer, clearly indicate that the tribar floors are part of the crate unit." Id. at 7. Gaosai claimed that only a few of its entries contained steel tribar floors, but TRLED found that a greater number of entries than Gaosai reported "contained either farrowing crates or tribar floors." Id. Further, as to the entries identified by Gaosai, "the commercial invoices and packing lists for [those] entries disclosed the descriptions as 'farrowing crates,' with no indication of whether the shipments contained tribar flooring." Id. Nonetheless, Gaosai "indicated that all farrowing crates … imported were designed to include tribar floors." Id. at 7–8.

TRLED acknowledged that it "is not required to initiate a scope referral" to Commerce unless CBP "is unable to determine whether the imported merchandise properly falls within the scope of the relevant AD/CVD order." Id. at 8 n.58 (citing 19 C.F.R. § 165.15(a)). Here, TRLED determined that it was not necessary to make such a referral. Therefore, based on the record before it, TRLED "found that the tribar floors portion of the imported farrowing crate systems" was covered by the AD/CVD Steel Orders. Id. at 8 ("[T]ribar floors are an essential part of the farrowing crate systems being imported into the United States, [and the importers list] them under the description 'parts for farrowing crates' rather than separately listing the tribar floors and declaring them as subject to the AD/CVD orders.").

In light of its evasion determination, TRLED suspended (or continued to suspend) liquidation for Plaintiffs' entries covered by the EAPA investigation and stated its intention to change "entries previously extended and … all future [subject] entries" from type 01 (not subject to AD/CVD cash deposits for steel grating) to type 03 (subject to cash deposits).  See Initial Determination at 6–9.

Upon Plaintiffs' request, pursuant to their rights under EAPA, OR&R conducted a de novo administrative review of the record and affirmed TRLED's determination.  Final Determination at 8, 10 ("[T]he purpose of this de novo review is to analyze the [Initial] Determination and the accompanying administrative record to determine whether substantial evidence of evasion exists.").   OR&R concluded that "[a] review of the administrative record and … requests for administrative review clearly indicate that tribar floors were entered as type '01' entries and, therefore, the applicable AD/CV duties owed on steel grating were not paid."  Id. at 8.  "So long as the tribar floors are considered covered merchandise under the applicable AD/CV duty orders," Ikadan and Gaosai should have entered their merchandise as type 03 entries and paid the applicable duties. Id.  Thus, OR&R found that "all entries of tribar floors that have been suspended or extended as a result of this EAPA investigation, regardless of the date of entry," were covered merchandise.  Id. at 10.  Accordingly, CBP concluded that Plaintiffs' failure to enter their merchandise as type 03 entries constituted evasion.

Concurrent with CBP's evasion investigation, Commerce initiated a scope review of the Orders, discussed infra Section I.C.  For Customs, Commerce's review here did not limit CBP's ability to make an independent covered merchandise determination or

impose interim measures, such as suspending liquidation of entries subject to the EAPA investigation. Final Determination at 9 ("CBP found that it was able to determine that tribar floors are covered merchandise based upon the contents of the record without a scope referral to Commerce."). In reaching an affirmative determination, OR&R relied, as had TRLED initially, on CBP's own interpretation of the AD/CVD Steel Orders to find that Plaintiffs' merchandise was "covered merchandise." Id. ("Specifically, CBP found, based upon the evidence in the administrative record, that the way the tribar floors are constructed would place them within the scope of the AD/CV duty orders and that no exclusions apply to the tribar floors."). OR&R determined that the "retroactive application of AD/CV duties to the entries subject to the EAPA investigation is permitted under the statute and implementing regulations …. Here, the [Tribar Steel Flooring] was already subject to a lawful suspension and extension of liquidation when Commerce began its independent scope [review]." Id.

## C. Remand to Consider Commerce's Scope Ruling

Commerce issued a scope ruling as to the following products imported by Plaintiffs: "(1) a farrowing flooring system that is partly made of galvanized steel tribar truss flooring and partly made of a ductile cast-iron floor; (2) a pig farrowing crate with the farrowing flooring system described in item (1); and (3) a pig farrowing crate without any flooring." See Certain Steel Grating from the People's Republic of China: Scope Ruling on Pig Farrowing Crates and Farrowing Floor Systems, (Dep't of Commerce May 11, 2021), RPR 7 ("Scope Ruling"). Contrary to the Plaintiffs' position that their merchandise was not "covered" for purposes of CBP's evasion determination, Commerce concluded that

"the decking of the tribar truss flooring under consideration in this proceeding is covered by the scope of the [AD/CVD Steel Orders], even when it is imported with other parts of the farrowing flooring system or the pig farrowing crate under consideration here." Id. at 15 (emphasis added). Commerce stated, however, "that the other parts and components of the tribar truss flooring that are under consideration, the cast-iron flooring, and the other components of the pig farrowing crate under consideration are outside of the scope of the [AD/CVD Steel Orders]." Id.

CBP did not consider Commerce's Scope Ruling in the Initial and Final Determinations because the record in the EAPA investigation had closed before Commerce issued its Ruling. See Remand Results at 2. Given the relevance of the Scope Ruling to Plaintiffs' challenge, Defendant moved for a remand to allow CBP "to place on the record and consider [Commerce's scope ruling] that certain products imported by plaintiffs are subject to the [AD/CVD Steel Orders]." See Consent Motion for Remand at 1, ECF No. 50.

In the Remand Results, CBP maintained its affirmative determination of evasion as to Plaintiffs' entries based on its own investigation, citing Commerce's Scope Ruling as additional support for its findings. Remand Results at 5. Customs stated that the Scope Ruling "was not needed for CBP to factually find that the tribar flooring portions are subject to the AD/CVD Orders," but that the "Ruling confirms these findings and has now been added to the administrative record." Id. at 4. Based on the record before it, including Commerce's Scope Ruling, CBP continued to find that Plaintiffs "engaged in evasion by entering Chinese-origin [steel grating] declared as type '01' entries, not subject

to AD/CVD Orders, in their consumption entries." Id. ("Such designation as a type '01' at the time of entry was materially false in that it failed to indicate that the CSG was merchandise covered by the relevant AD and CVD Orders. The false designation also led to the non-collection of AD and CVD deposits.").

## II. Standard of Review

In reviewing a determination of evasion under EAPA, the court shall first "examine … whether [CBP] fully complied with all procedures under subsections (c) [initial determinations] and (f) [final determinations based on administrative review]," and then determine "whether any determination, finding or conclusion is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 19 U.S.C. § 1517(g)(1)–(2).

To determine whether an agency's decision is "arbitrary, capricious, or an abuse of discretion," the court "look[s] for a reasoned analysis or explanation for [the] decision." Wheatland Tube Co. v. United States, 161 F.3d 1365, 1369 (Fed. Cir. 1998). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). The agency must nonetheless articulate a "rational connection between the facts found and the choice made." Id. (quoting Burlington Truck Lines v. United States, 371 U.S. 156, 168 (1962)). The court "will, however, 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" State Farm, 463 U.S. at 43 (quoting Bowman Transp. Inc. v. Ark.-Best Freight System, 419 U.S. 281, 286 (1974)).

Separately, the two-step framework provided in <u>Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 842–45 (1984), governs judicial review of Customs' interpretation of EAPA. <u>See</u> <u>United States v. Eurodif S.A.</u>, 555 U.S. 305, 316 (2009) ("[An agency's] interpretation governs in the absence of unambiguous statutory language to the contrary or unreasonable resolution of language that is ambiguous.").

### III. Discussion

### A. Culpability Under 19 U.S.C. § 1517(a)(5)(A)

As a threshold matter, Plaintiffs raise a legal question, specifically arguing that "[t]he plain meaning of the term 'evasion' in EAPA requires at least some level of culpability." Pls.' Br. 2; 22. In reaching its determinations, however, CBP made no finding as to Plaintiffs' culpability (<u>e.g.</u>, negligence, gross negligence, fraud, or other degree of blameworthiness or fault). Rather, CBP relied on the simple fact that Plaintiffs had misclassified their entries as not subject to AD/CVD duties in determining that Plaintiffs had engaged in evasion. <u>See, e.g.</u>, <u>Final Determination</u> at 10 ("The administrative record contains substantial evidence that entries of covered merchandise were made by the Importers during the period of investigation and were not declared as subject to the AD/CV duty orders. This constitutes evasion as defined by EAPA."); Def.'s Resp. 22 (arguing that CBP correctly declined to read culpability requirement into EAPA statute); <u>see also</u> Oral Argument at 02:07:00–56 (Apr. 17, 2023), ECF No. 76 (expressly clarifying that CBP interprets EAPA as strict liability statute). Thus, the precise question before the court is whether EAPA's definition of "evasion" contains a requirement that CBP find that

importers acted culpably in making material false statements or omissions before determining whether the importers engaged in evasion.

Under Chevron, "[w]hen a court reviews an agency's construction of the statute which it administers," the court must first determine whether the statutory language is clear or ambiguous.  467 U.S. at 842.  If "Congress has directly spoken to the precise question at issue," and its intent is clear, then "that is the end of the matter."  Id. at 842–43 ("[T]he court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").  If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."  Id. at 843; see also City of Arlington v. FCC, 569 U.S. 290, 296 (2013) ("Congress knows to speak in plain terms when it wishes to circumscribe, and in capacious terms when it wishes to enlarge, agency discretion.").

Plaintiffs believe that this question should be resolved under the first step of Chevron—i.e., the plain language of the definition.  For Plaintiffs, "to read the EAPA statute as carrying no culpability requirement ignores the fact that any false statement or 'omission' must be 'material.'"  Pls.' Br. 22 (quoting Diamond Tools Tech. LLC v. United States, 45 CIT ___, ___, 545 F. Supp. 3d 1324, 1353 (2021) ("Diamond Tools I")); Oral Argument at 02:03:07–40 (emphasizing that inclusion of word "material" creates intent requirement in definition of evasion).  Defendant counters that, by its plain terms, the statutory definition of evasion does not require CBP to find that importers acted culpably when evading AD or CVD orders.  Def.'s Resp. 21–22.  Defendant also urges the court to consider EAPA in light of the language of 19 U.S.C. § 1592, CBP's civil penalty statute,

emphasizing that "when Congress intends for the motivations behind a party's actions to impact the penalty for improper importation, it says as much in the statutory language." Id.

The court concludes that the question at issue here is not resolved under Chevron step one because the plain language of the statutory definition of evasion does not express clear Congressional intent to establish a culpability requirement. Plaintiffs have not pointed to any authority or broader statutory context defining the specific words on which they rely to indicate culpability. § 1517(a)(5)(A); see generally Pls.' Br. "Unless otherwise defined, 'words will be interpreted as taking their ordinary, contemporary, common meaning.'" Diamond v. Diehr, 450 U.S. 175, 182 (1981) (quoting Perrin v. United States, 444 U.S. 37, 42 (1979)). Here, the general meaning of a "false" statement or representation is one that is "Untrue … Deceitful … Not genuine; inauthentic … Wrong; erroneous." Black's Law Dictionary (11th ed. 2019). "What is false can be so by intent, by accident, or by mistake." Id. (emphasis added). "Omission" is defined as "[a] failure to do something; esp., a neglect of duty … [t]he act of leaving something out … [t]he state of having been left out or of not having been done … [s]omething that is left out, left undone, or otherwise neglected." Id. Finally, "material" indicates something "[o]f such a nature that knowledge of the item would affect a person's decision-making; significant; essential." Id. Thus, nothing in the definition requires that a materially false statement or omission be made with a particular state of mind.

Plaintiffs' reliance on the court's observations in Diamond Tools regarding culpability under EAPA is misplaced. There, the court concluded that CBP had failed

to justify its finding that the plaintiff-importer had "entered covered merchandise by means of a material and false statement or a material omission."  45 CIT at ___, 545 F. Supp. 3d at 1351;  see also  Diamond Tools Tech. LLC v. United States,  46 CIT  ___,  ___, 609 F. Supp. 3d 1378, 1387–88 (2022) ("Diamond Tools II") (remanding to CBP for second time).   The relevant antidumping duty order that the plaintiff evaded covered diamond sawblades and parts thereof from China and Korea.  Diamond Tools I, 45 CIT at ___, 545 F. Supp. 3d at 1328.   Specifically, the plaintiff had reported the country of origin of its subject imports as Thailand rather than China, in reliance on express guidance from Commerce permitting importers to label their merchandise as originating in the country where its component parts were assembled.  See Diamond Tools II, 46 CIT at ___, 609 F. Supp. 3d at 1387–88.  Commerce later changed its position as to the proper scope of the relevant AD order—partially in response to a scope referral by CBP pursuant to § 1517(b)(4)(A)—and determined that the plaintiff's merchandise was covered by the order based on the Chinese origin of its component parts.  Diamond Tools I, 45 CIT at ___, 545 F. Supp. 3d at 1330.  CBP then concluded that the new scope applied to all of the plaintiff's entries covered by the EAPA investigation, including those made prior to Commerce's change in position.  Id. at ___, 545 F. Supp. 3d at 1331.

The court disagreed, and found—twice—that CBP had failed to show what false statements or omissions the plaintiff had made as to the country of origin of merchandise entered prior to the scope change.  See id. at ___, 545 F. Supp. 3d at 1354 ("Neither the [original decision by Commerce] nor the [original AD order] prohibited [the plaintiff] from manufacturing Chinese-origin cores and segments in Thailand and labelling the finished

diamond sawblades as Thai-origin.  To the contrary, the way in which [the plaintiff] labeled its imports was expressly contemplated and sanctioned by Commerce's [then-in-effect decision].");  Diamond Tools II, 46 CIT at ___, 609 F. Supp. 3d at 1388–89 ("[F]illing out the forms in a way that tracked explicitly Commerce's [decision] does not constitute a material and false statement or omission.  In fact, not only did the importer expressly and verbatim follow the terms of the [original antidumping order], there was, in fact, no other possible interpretation of the scope of this Order.").  Ultimately, the court there held that CBP had acted unreasonably in determining that the plaintiff had made material false statements or omissions within the meaning of EAPA, given that the plaintiff had complied with express agency guidance.  Accordingly, Diamond Tools does not resolve the legal question of statutory interpretation presented in this action.

Given the above, the court concludes that the definition of evasion is silent as to culpability, and to the second step of the Chevron inquiry: "whether the agency's answer [to the question at issue] is based on a permissible construction of the statute."  467 U.S. at 843 (footnote omitted).  A "permissible" interpretation is one that is "reasonable"—even if it is not "the only possible interpretation or … the one a court might think best." Holder v. Martinez Gutierrez, 566 U.S. 583, 591 (2012); see also Globe Metallurgical Inc. v. United States, 34 CIT 1153, 1155–56 (2010) (where language does not show "clear Congressional intent," implementing agency "has a measure of Chevron step-two, gap-filling discretion").

Plaintiffs do not address Chevron step two beyond the bare assertion that CBP's construction of the evasion definition is "impermissible."  Pls.' Br. 21.  Plaintiffs also fail to

address the broader context of the definition in the language of § 1517 itself. Indeed, Plaintiffs' only reference to the larger statutory scheme is an attempt to draw a parallel between § 1517 and CBP's civil penalty statute, 19 U.S.C. § 1592. See Pls.' Br. 26; Pls.' Reply 17. Specifically, Plaintiffs point to the parties' obligations in civil penalty actions: i.e., where "Customs has the burden merely to show that a materially false statement or omission occurred; once it has done so, the defendant must affirmatively demonstrate it exercised reasonable care under the circumstances." Pls.' Br. 26 (citing United States v. Ford Motor Co., 463 F.3d 1267, 1279 (Fed. Cir. 2006)).

EAPA read as a whole supports CBP's strict liability interpretation of the definition of evasion. First, following the general definition of evasion, the statute contains an explicit exception for clerical errors that provides that "the term 'evasion' does not include entering covered merchandise … by means of [documents or statements that are false or omissive] as a result of a clerical error" unless "the clerical error is part of a pattern of negligent conduct." 19 U.S.C. § 1517(a)(5)(B) (emphasis added). "[W]here Congress includes particular language in one section of a statute but omits it in another …, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Russello v. United States, 464 U.S. 16, 23 (1983). The inclusion of language assessing an importer's state of mind in one subsection of the definition shows that Congress could have incorporated the same wording in the general definition, if it had intended culpability as a prerequisite for an affirmative determination of evasion. It did not.

Likewise, the contrast between § 1517 and § 1592 only serves to underscore the reasonableness of Defendant's construction, not to contradict it.  Section 1592—unlike § 1517—explicitly incorporates three levels of culpability (negligence, gross negligence, and civil fraud).  Furthermore, § 1592 is accompanied by a provision granting Customs subpoena power.    See 19 U.S.C. § 1595; Oral Argument at 01:14:25–15:15 (distinguishing § 1517 from § 1592 based on Customs' subpoena power in civil penalty context).   Under EAPA, Customs has no subpoena power, but must nonetheless incentivize importer cooperation with its requests for information.   It is well-established that "[s]trict liability maximizes deterrence and eases enforcement difficulties."  Dep't of Housing & Urban Dev. v. Rucker, 535 U.S. 125, 134 (2002).  A determination of evasion when a party has, for whatever reason, made materially false statements or omissions in the course of entering covered merchandise deters future acts of evasion.

EAPA itself expressly sets forth that CBP is free to pursue other enforcement actions, including under § 1592, where "appropriate."  19 U.S.C. § 1517(d)(1)(E)(i).  This further supports CBP's interpretation, which Plaintiffs fail to address.  Subsection (d)(1)(E)(i) implies that penalties based on culpable conduct may be warranted in some, but not all, circumstances involving evasion.  It therefore follows that not all circumstances supporting a determination of evasion will involve culpable conduct.

Finally, Plaintiffs assert that they did not evade the AD/CVD Steel Orders because they had a "good faith disagreement" with CBP about the scope of the Orders.  See Pls.' Br. 25 ("Even assuming CBP has met its burden of establishing a 'material' act or omission in this case (we assert it has not), Ikadan and Gaosai have affirmatively

rebutted such a finding and demonstrated that any scope issue in this case is merely an honest, good faith disagreement between the Plaintiffs and CBP, not 'evasion.'"). Essentially, this argument is an application of Plaintiffs' preferred interpretation of the definition of evasion: specifically, that non-culpable (i.e., good faith) conduct cannot be found to constitute evasion. Because Plaintiffs have failed to show that the plain language of the definition establishes a culpability requirement, or that CBP's interpretation of the definition is impermissible, this argument also fails.

## B. CBP's Determination as to Covered Merchandise

Plaintiffs next challenge CBP's determination that their merchandise—pig farrowing crates and floor systems—was "covered merchandise" within the meaning of the AD/CVD Steel Orders. See Pls.' Supp. Br. 3–5. Plaintiffs argue that, "[t]o withstand Court review, CBP must justify its finding that Plaintiffs' products are 'covered merchandise,' applying the same legal framework that the Court would use in direct review of a scope determination by Commerce"—i.e., that the determination be supported by substantial evidence and in accordance with law. Pls.' Supp. Br. 5; Pls.' Br. 6–7.

Prior to the remand and the placement of Commerce's Scope Ruling on the administrative record, Plaintiffs conceded that they were "not aware of any caselaw addressing the standard of review for CBP in its interpretation of AD/CVD Orders that were created and are administered by Commerce." Pls.' Br. 6. Nonetheless, Plaintiffs contend that Customs erred both when it made its initial covered merchandise determination (without a referral to Commerce), and in the Remand Results, when it included Commerce's Scope Ruling on the record. Pls.' Supp. Br. 5 ("CBP is attempting

to have it both ways—independent enough under the EAPA statute to be able to make its own scope determinations without Commerce's aid, yet hiding behind Commerce by insisting that it … is not required to defend its scope determinations when it relies on a scope determination by Commerce in a separate proceeding."). Plaintiffs argue that the court "must determine whether all aspects of CBP's determination," including its covered merchandise determination, "are supported by substantial evidence." Id.

Defendant, on the other hand, urges the court to reject Plaintiffs' proposed application of the standard that governs Commerce's interpretation of its AD and CVD orders to CBP's covered merchandise determination. Def.'s Resp. 27. Throughout its brief, Defendant emphasizes that CBP has the authority to make covered merchandise determinations, and that here, its determination was in accord with Commerce's Scope Ruling. See id. at 14–19 ("Commerce's scope determination thus confirmed what CBP found: plaintiffs' products containing steel grating components are covered by the scope of the Orders and, thus, plaintiffs failed to pay applicable duties when the products entered the United States and evasion occurred."). Further, Defendant argues that the court, in the process of reviewing CBP's covered merchandise determination for arbitrariness, should not undertake a review of Commerce's Scope Ruling court on its merits. Id. at 27 ("[P]laintiffs acknowledge, they could have appealed, but chose not to appeal, Commerce's scope determination under 19 U.S.C. § 1516a …. With § 1517 limiting this Court's review to whether CBP's evasion determination is arbitrary, capricious, or not in accordance with the law, and a statutory provision that – plaintiffs concede – would allow them to challenge a scope ruling before this Court, plaintiffs' assertions fail.").

As an initial matter, Plaintiffs misunderstand the standard governing the court's review of Customs' determinations. Under EAPA, the court shall review "whether any determination, finding, or conclusion [made by CBP in its initial determination and in the administrative review] is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 19 U.S.C. § 1517(g)(2)(B). Arbitrariness review is distinct from reasonableness review, i.e., review for "substantial evidence." 3 Charles H. Koch, Jr. & Richard Murphy, Administrative Law and Practice §§ 9.24, 9.25 (3d ed. 2023).

"[I]n terms of critical attitude, the reasonableness and arbitrariness standards point judicial review in emotionally opposite directions." Administrative Law and Practice, § 9.25[2]. Specifically, reasonableness review "requires the court to reach the positive conclusion that the agency's decision is reasonable before it may accept that decision," while arbitrariness review "requires only that the court reach the negative conclusion that the agency's decision is not arbitrary in order to accept that decision." Id. ("Thus, in order to uphold the agency under the reasonableness standard, the court must to some extent approve of the agency's determination, even if it does not reach the point of agreement. But, in order to uphold the agency under the arbitrariness standard, the court need only reach the point at which it can conclude that the agency's decision is not intolerable." (emphasis added)).

Plaintiffs have failed to show that CBP's covered merchandise determination is arbitrary and capricious. Given the broad language of the AD/CVD Steel Orders, the evidence in the record describing the subject merchandise, and the additional support of Commerce's Scope Ruling, Customs has established the necessary "rational connection

between the facts found and the choice made" to support its conclusion on the merits. Burlington Truck Lines, 371 U.S. at 168. Here, Customs reviewed the parts and production process associated with the subject merchandise, and concluded that, because Plaintiffs' tribar floors consisted "of two or more pieces of steel joined together by welding," they were covered by the AD/CVD Steel Orders—which, in turn, encompass "certain steel grating, consisting of two or more pieces of steel … joined by any assembly process." Initial Determination at 8; see also Final Determination at 9 (summarizing initial findings). CBP also determined that the scope of the AD/CVD Steel Orders did "not include any exclusions [as to] the tribar floors." Initial Determination at 8.

Plaintiffs' arguments to the contrary are a misguided attempt to reframe the standard of review and would require Customs to withstand a higher level of scrutiny than that set forth in EAPA. Additionally, Plaintiffs mischaracterize how CBP exercised its authority to make the covered merchandise determination here. In their initial brief supporting their motion for judgment on the agency record, filed prior to the remand and issuance of the Remand Results, Plaintiffs seemingly challenged CBP's authority to make that determination at all. See Pls.' Br. 23 ("[T]he statutory scheme of EAPA, viewed as a whole, cannot be construed as allowing CBP to issue its own scope determinations under the guise of preventing 'evasion' of AD/CVD orders."); see also id. at 8 ("EAPA does not grant CBP the authority to develop its own set of criteria in determining whether a particular product falls within the scope of an AD/CVD order established by Commerce."). Plaintiffs further asserted that, because "only Commerce can interpret and clarify the scope of an antidumping duty order," the court should not grant any deference to CBP's

interpretation of the scope of the AD/CVD Steel Orders.  Id. at 7 (quoting United Steel & Fasteners, Inc. v. United States, 947 F.3d 794, 803 (Fed. Cir. 2020)).

As noted, Plaintiffs sought (and eventually obtained) a scope ruling from Commerce as to Plaintiffs' subject merchandise.  In its Scope Ruling, Commerce determined that the tribar floor portions of Plaintiffs' entries were within the scope of the AD/CVD Steel Orders.  Remand Results at 3 (tribar floors are within scope "despite their inclusion with other farrowing crate and/or flooring system components").  Once CBP placed Commerce's Scope Ruling on the record, Plaintiffs abandoned their earlier emphasis on Commerce's sole authority to interpret the AD/CVD Steel Orders, arguing instead that CBP should not rely on Commerce's Scope Ruling.  See Pls.' Supp. Br. 2 ("Plaintiffs … submitted their comments on CBP's Draft Remand Redetermination, demonstrating in detail why Commerce's Scope Ruling does not provide substantial evidence in support of CBP's conclusion that Plaintiffs' pig farrowing crates and farrowing flooring systems are within the scope of the [AD/CVD Steel Orders].").  Plaintiffs also contended that "even if CBP had made a scope referral [to Commerce], there is nothing in the EAPA statute or CBP's regulations that requires CBP to follow Commerce's scope determination, when CBP makes its EAPA determination."  Pls.' Supp. Br. 5.

The court does not agree with Plaintiffs.  By reaching its conclusion that Plaintiffs' merchandise is covered by the AD/CVD Steel Orders, CBP was not making a "scope determination" in Commerce's stead; it was acting pursuant to EAPA's directive to initiate an investigation based on CBP's determination "that the information provided in the allegation … reasonably suggests that covered merchandise has been entered into

the customs territory of the United States through evasion." 19 U.S.C. § 1517(b)(1). Specifically, Customs shall either reach a covered merchandise determination itself, as it did here, or refer the matter to either Commerce if it is <u>unable</u> to reach the determination independently. <u>Id.</u> § 1517(b)(4). Indeed, despite their arguments to the contrary, Plaintiffs acknowledged in their briefing that "the text and structure of EAPA requires CBP to determine what is 'covered merchandise.'" <u>See</u> Pls.' Br. 40.

Further—and even setting aside the inconsistency of Plaintiffs' arguments—it is important to note that CBP did not "follow" or rely on Commerce's Scope Ruling in this matter. Rather, CBP treated the Ruling as additional information on the record that supported CBP's <u>independent</u> covered merchandise determination. <u>Remand Results</u> at 2 ("[U]pon reconsideration and in the interest of completeness of the record, [Customs] is considering the Scope Ruling on remand."). This was in accord with CBP's position throughout the administrative proceedings below: that Commerce's interpretation was not a prerequisite for CBP to reach its own covered merchandise determination under EAPA. <u>See, e.g.</u>, <u>Final Determination</u> at 9 ("[S]uch a scope referral to Commerce was not needed and CBP acted within its authority in determining that the tribar floors are within the scope of the [<u>AD/CVD Steel Orders</u>].").

Finally, Plaintiffs concede that they have not actually challenged Commerce's Scope Ruling on its merits. Pls.' Supp. Br. 6 ("Although Plaintiffs could have challenged [the Scope Ruling] under [19 U.S.C. § 1516a], … Section 1517 concerns an entirely different statute (EAPA), with an entirely different set of consequences."). Thus, the Scope Ruling is before the court only as additional record evidence buttressing

CBP's ultimate covered merchandise determination.  Cf. State Farm, 463 U.S. at 43 (agency action may be arbitrary and capricious where agency "offered an explanation for its decision that runs counter to the evidence before" it).  Given CBP's determinations, the court discerns no "clear error of judgment" on the part of the agency.  Bowman, 419 U.S. at 285 (quoting Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971)).  Therefore, the court sustains Customs' determination that Plaintiffs' entries containing steel tribar floors were covered by the AD/CVD Steel Orders.

## C. Plaintiffs' Challenges to CBP's Suspension of Liquidation and Assignment of Cash Deposits

Plaintiffs' final arguments are framed as another challenge to CBP's evasion determination contending that Customs applied its "covered merchandise" determination too broadly.  Pls.' Br. 27.  Nonetheless, their objections primarily target the suspension of liquidation and the assignment of AD/CVD cash deposits via required rate advances. See id.  ("CBP arbitrarily and capriciously suspended liquidation and assigned AD/CVD cash deposits in an overbroad manner to Plaintiffs' imports that contain no tribar …."); see also 19 U.S.C. § 1517 (d)–(e) (suspension of liquidation and rate advances are available to CBP as interim measures or as effects flowing from evasion determination itself).  These arguments essentially challenge the interim measures that CBP took pursuant to subsection (e) of EAPA, and the ultimate effect of its evasion determination under subsection (d).  See Notice of Initiation of Investigation and Interim Measures, EAPA Consol. Case No. 7474, (Sept. 18, 2020), PR 15; Final Determination at 3 (discussing interim measures); Notice of Action as to Ikadan (CF-29) (July 7, 2021),

ECF No. 36-5; Notice of Action as to Gaosai (CF-29) (July 27, 2021), ECF No. 36-6;
see also Pls.' Br. 27–41.

Plaintiffs first contend that, under the statute, "CBP is required to not only make a determination of 'evasion,' but the agency must also identify the 'covered merchandise' that is subject to an AD or CVD order and was entered into the United States through the 'evasion.'"  Pls.' Br. 40.  For Plaintiffs, because the statute permits CBP to suspend liquidation of entries of covered merchandise under § 1517(d) or continue to suspend liquidation of entries already suspended as an interim measure under § 1517(e), CBP must "determine the universe of unliquidated merchandise already imported that constitutes 'covered merchandise' and apply the suspension of liquidation to those entries and nothing that falls outside the universe of 'covered merchandise.'"  Pls.' Br. 40–41. Plaintiffs further maintain that, contrary to these requirements, "CBP simply issued CF-29 notices that listed entries covered, without any detail as to what items were and were not covered or the amount of the rate advances."  Pls.' Br. 27.

In support of their arguments, Plaintiffs describe the evidence in the record that they believe demonstrates that certain of their entries subject to the EAPA investigation do not contain any tribar flooring.  Pls.' Br. 33–37 ("CBP ignored detailed information that Ikadan and Gaosai provided to help CBP identify precisely those entries and line items that contained tribar, and identify the correct values of those items so that rate advances based on the AD/CVD cash deposit rates could be properly calculated.").  Of particular importance to Plaintiffs is the fact—which the Government does not dispute—that CBP undertook some review of each individual entry early in the investigation, when assessing

which entries contained covered tribar floors.  See Pls.' Reply 23 ("It was CBP that chose to review all of the entries and, in its EAPA Determination, judge which ones were and were not covered."); see also Def.'s Resp. 31 ("Hog Slat's allegation – resulting in the initiation of this investigation – asserted that all of plaintiffs' entries contained subject merchandise … . Notwithstanding this, CBP tailored its actual evasion determination to only those entries for which record evidence indicated, in CBP's estimation, the inclusion of subject merchandise.").

Defendant contends that Plaintiffs' challenge to CBP's implementation of its covered merchandise determination is beyond the scope of the court's review under EAPA.  Specifically, Defendant argues that the court cannot reach challenges to the suspension of liquidation or assignment of cash deposits because subsection (g) of EAPA only permits judicial review as to "CBP's determination that evasion occurred – not the final duty rates applied to a given entry at liquidation (which has not yet occurred)." Def.'s Resp. 28.  The proper recourse for Plaintiffs' challenge, according to Defendant, is via a protest under 19 U.S.C. § 1514.  Id. at 29 ("[Plaintiffs] can submit argument and documentation to CBP before the duties are assigned (but after review of the actual evasion determination in this Court are completed), protest CBP's assignment of duties …, and, if necessary, appeal the results of that protest to this Court [under 28 U.S.C. § 1581(a)].").[7]

---

[7] As Defendant points out, Plaintiffs can pursue an alternate remedy by protesting CBP's implementation of its evasion determination under § 1514, and seeking judicial review under 28 U.S.C. § 1581(a).  Because of EAPA's limitation of the court's review, discussed supra, the court does not reach Plaintiffs' undeveloped argument that pursuing (footnote continued)

The court agrees with Defendant.  Plaintiffs' challenges to CBP's suspension of liquidation and assignment of cash deposits ask the court to reach beyond the scope of EAPA's judicial review.  The statutory text explicitly establishes the court's authority to examine "a determination under subsection (c) or review under subsection (f)."  19 U.S.C. § 1517(g)(2).  The following subparagraphs of the section further provide that the court shall determine "whether the Commissioner fully complied with all procedures under subsections (c) and (f)" and "whether any determination, finding, or conclusion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  Id. § 1517(g)(2)(A)–(B).  It is well-established that "Congress ordinarily adheres to a hierarchical scheme in subdividing statutory sections," where subparagraphs denominated by capital letters (here, A and B) fall within paragraphs denominated by numerals (here, 2).  Koons Buick Pontiac GMC, Inc. v. Nigh, 543 U.S. 50, 60 (2004) (citing to Congressional legislative drafting manuals).  Therefore, the subparagraph language referring to "any determination, finding, or conclusion" in § 1517(g)(2)(B) must be read within the context of the paragraph language preceding it: i.e., "[i]n determining whether a determination under subsection (c) or review under subsection (f) is conducted in accordance with those subsections."

---

the protest route "could erase any unlawful duty but could not compensate for the injury of Plaintiffs having to post cash deposits."  Pls.' Supp. Br. 9–10.  As a general matter, however, the court notes that the payment of cash deposits is not a cognizable injury. See, e.g., Valeo N. Am., Inc. v. United States, 41 CIT ___, ___, 277 F. Supp. 3d 1361, 1366 (2017) (holding that payment of cash deposits is "ordinary consequence of the statutory scheme," not harm preventable by issuance of temporary restraining order (quoting MacMillan Bloedel Ltd. v. United States, 16 CIT 331, 333 (1992))).

Plaintiffs have not pointed to any language in the EAPA statute permitting the court to assess the reasonableness, or indeed the lawfulness, of CBP's actions taken pursuant to subsection (d) or (e).  Based on its reading of the statute as a whole, the court declines to stray beyond the bounds of judicial review established by subsection (g).

## IV. Conclusion

For the foregoing reasons, the court sustains the <u>Final Determination</u> and <u>Remand Results</u> determining that Plaintiffs' entries covered by EAPA Consol. Case No. 7474 evaded the <u>AD/CVD Steel Orders</u>.  Judgment will enter accordingly.

/s/ Leo M. Gordon<br>
Judge Leo M. Gordon

Dated: June 13, 2023
     New York, New York